UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                 Case No. 15-20411

Hakeim Murphy,               Sean F. Cox
                                          United States District Court Judge

    Defendant.
_____/

## OPINION AND ORDER GRANTING MOTION FOR JUDICIAL RECOMMENDATION FOR MAXIMUM HALFWAY HOUSE PLACEMENT (ECF No. 30) AND DENYING MOTION FOR COMPASSIONATE RELEASE (ECF No. 32)

Defendant Hakeim Murphy has served just over half of his 60-month sentence for heroin distribution. Murphy is 40 years old, has asthma, and is currently being held at FCI Elkton, one of the federal prisons hardest hit by the ongoing novel coronavirus pandemic ("COVID-19").

Murphy has filed two post-sentencing motions. Before the onset of the COVID-19 pandemic, Murphy moved for a judicial recommendation that he be admitted to a residential reentry center (also known as a "halfway house") for the final year of his sentence. When this motion was filed three months ago, the Government did not oppose it. However, last week, the Government apparently had a change of heart and filed a response opposing this motion. As explained below, the Court will grant this request.

After the COVID-19 pandemic hit, Murphy moved for compassionate release, asking the Court to allow him to serve the remainder of his sentence at home because of his asthma and the number of infections at FCI Elkton. Murphy wishes to spend the rest of his prison term at his home

1

in Southfield, Michigan (which is in the heart of the Detroit Metropolitan Area, and near some of the highest concentrations of COVID-19 infections and deaths in the country), with his wife, who has Stage 3 colon cancer, and her two teenaged children. However, the current circumstances do not warrant a reduction or modification of Murphy's sentence, so the Court will deny this motion.

## BACKGROUND

On April 6, 2016, Murphy pleaded guilty to one count of distribution of heroin, in violation of 21 U.S.C. § 841(a). (ECF No. 14). On November 16, 2016, the Court imposed a below-Guidelines sentence of 60 months.[1] (ECF No. 21). After sentencing, Murphy (who had been on bond throughout his court proceedings) was granted several extensions of his report date to prison because of necessary hemorrhoid surgeries and related medical treatments. (ECF Nos. 22, 23, 24, 26, 27, and 28). Murphy reported to the Bureau of Prisons ("BOP") on September 15, 2017. According to the BOP's website, Murphy is expected to be released on December 13, 2021.

On February 25, 2020, Murphy filed a motion "for judicial recommendation for maximum RRC/Halfway House Placement." (ECF No. 30). In that motion, Murphy's counsel stated that the Government took no position on this issue. On May 8, 2020, however, the Government reversed course and filed a response in opposition to Murphy's motion for a judicial recommendation of maximum halfway house time.

On April 23, 2020, Murphy filed a motion for compassionate release under 18 U.S.C. § 3582(c), arguing that his acute asthma and assignment to FCI Elkton present "extraordinary and compelling reasons" for him to serve the remainder of his sentence on home confinement. (ECF

---

[1] Murphy's plea agreement provided for a range of 57 to 71 months. (ECF No. 14, PageID 26). However, at sentencing, the Probation Department calculated his Guidelines Range as 70 to 87 months. (ECF No. 29, PageID 106).

2

No. 32). He has also filed two additional supplemental briefs. (ECF Nos. 34 and 35). On April 30, 2020, the Government responded, opposing Murphy's release. (ECF No. 36). On May 1, 2020, Murphy filed a reply. (ECF No. 37). Counsel for Murphy and the Government have also provided the Court with numerous supplemental citations to news stories about the conditions at FCI Elkton and references to other district court opinions dealing with similar motions filed by similar defendants in other cases. The parties also provided, and the Court reviewed, case material from *Wilson v. Williams*, Case No. 20-00794 (N.D. Ohio, filed April 13, 2020), including the Honorable James S. Gwin's April 22, 2020 Opinion and Order in that case, and an affidavit from FCI Elkton's Health Services Administrator that was filed in that case. On May 13, 2020, the Court held oral arguments through Zoom, a video conferencing software.

## ANALYSIS

**I.     Motion for Recommendation for Maximum RRC/Halfway House Placement**

The BOP may place an inmate in a halfway house for no longer than twelve months at the end of his sentence. 18 U.S.C. § 3624(c)(1); *see also Demis v. Sniezek*, 558 F.3d 508, 514 (6th Cir. 2009). The BOP determines penal facility placement based on several factors, including statements made by the sentencing court. *United States v. George*, 2018 WL 2148179 at *2 (E.D. Mich. 2018) (citing 18 U.S.C. § 3621(b)). While a court may make a non-binding recommendation for placement in a halfway house, the BOP has the exclusive authority to determine if an inmate should be placed there and, if so, for how long. 18 U.S.C. § 3621(b); *see United States v. Caudle*, 2019 WL 5086422 at *2 (N.D. Ohio 2019).

Murphy asks the Court to recommend that the BOP allow him to spend the last year of his sentence at a halfway house. He believes that such a placement is appropriate because (1) he is a

non-violent offender; (2) he has no disciplinary infractions; (3) he has completed or participated in a Drug Abuse Education Course, a GED class, an advanced GED class, and two fitness classes; and (4) since his incarceration, his wife has been diagnosed with Stage 3 colon cancer, which affects her ability to function normally. If Murphy was placed in a halfway house for the maximum time allowable by law, he would enter his halfway house on December 13, 2020.

Based on the information currently before the Court, Murphy may be an appropriate candidate for maximum halfway house placement. But the Court reaches that conclusion with one important caveat: the BOP likely has more complete and accurate information regarding Murphy's fitness for that placement and certainly has the power to reach a different conclusion. Thus, while the Court will grant this motion, it also acknowledges that the BOP has the authority to disagree with it. *See* 18 U.S.C. § 3621 ("Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.")

## II.     Motion for Compassionate Release

### A.     The Parties' Arguments

#### i.     Murphy

Murphy's motion for compassionate release is grounded in the COVID-19 pandemic. He argues that his asthma condition, as substantiated by a doctor's note (ECF No. 32-4, PageID 189) and his medical records (ECF No. 32-6, PageID 198-220), puts him at an "extremely high risk for COVID-19." This risk is exacerbated by his placement at FCI Elkton, which—as of May 14, 2020—has 76 confirmed cases of COVID-19 among its inmate population and 12 confirmed cases

4

among its staff. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last accessed May 14, 2020). Nine inmates at FCI Elkton have died of COVID-19. *Id.*[2]

The conditions at FCI Elkton have not escaped the notice of the courts. On April 22, 2020, the Honorable James S. Gwin of the United States District Court for the Northern District of Ohio ordered the BOP to evaluate certain at-risk inmates' eligibility for transfer out of FCI Elkton "through any means, including but not limited to compassionate release, parole or community supervision, transfer furlough, or non-transfer furlough" within two weeks. *Wilson v. Williams*, -- F.Supp.3d --, 2020 WL 1940882 at *14 (N.D. Ohio, April 22, 2020).

Judge Gwin's order is currently on appeal at the Sixth Circuit. On May 4, 2020, the Sixth Circuit denied the BOP's motion to stay enforcement of this order.

As part of the *Wilson* case, the BOP identified Murphy as an inmate that may be eligible for transfer out of FCI Elkton. Notice of Identification of Inmates, *Wilson v. Williams*, Case No. 20-00794 (ECF No. 35, PageID 532) (N.D. Ohio, filed April 30, 2020).

In sum, Murphy's argument for compassionate release or transfer to home confinement boils down to this: he has asthma and is being held in a hotbed of COVID-19, with no ability to practice social distancing or proper hygiene.

### ii. The Government

The Government opposes Murphy's motion for two reasons. First, the Government argues that the BOP has already taken steps to address Murphy's concerns and evaluate whether he should leave FCI Elkton. Murphy is "already under review through existing protocols," including procedures instituted by Attorney General William Barr to evaluate prisoners for home

---

[2] Additionally, the BOP reports that, as of May 14, 2020, 54 inmates and 40 staff members have recovered from COVID-19. *Id.*

confinement and Judge Gwin's order in *Wilson*.³ The Government also states that FCI Elkton has established procedures to prevent or mitigate the spread of COVID-19 through the prison.

Second, the Government argues that Murphy is not eligible for compassionate release because there are no extraordinary or compelling reasons to grant a sentence reduction. Murphy has not met any condition described in U.S.S.G. § 1B1.13: his asthma has not reached a "terminal" phase with an "end of life trajectory," and he is not unable to "self-care" due to a medical condition "from which he is not expected to recover." The Government also argues that "[t]he crux of Murphy's claim is a generalized assertion that he *could* contract COVID-19 and that the virus *could* jeopardize his health, and that the risk of those things happening in prison is greater than the risk of them happening on release."

### B. Applicable Standards

Under 18 U.S.C. § 3582(c)(1)(A), the Court may reduce an imposed sentence if it determines that "extraordinary and compelling reasons warrant such a reduction." On top of making this finding, the Court must also consider the sentencing factors described in 18 U.S.C. § 3553(a) and decide if a sentence reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) is the "applicable policy statement" with which the Court must comply when considering Murphy's request for compassionate release. 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 explains that a

---

³ In its response, the Government walks through the factors established by Attorney General Barr to determine whether a prisoner should be confined at home, and explains why home confinement is not appropriate for Murphy. These factors are internal guidelines, promulgated by the Attorney General, to determine whether the BOP should exercise its discretion to allow a prisoner to be placed on home confinement.

defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of four categories of "extraordinary and compelling reasons." Those categories are: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons." The category of "Other Reasons" requires the BOP to determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" outlined in the other three categories. U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(D). The BOP has released Program Statement 5050.50 to guide its determination of extraordinary and compelling circumstances under this fourth category. Federal Bureau of Prisons, U.S. Department of Justice, Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (2019).

"In all, a defendant seeking compassionate release must present extraordinary and compelling circumstances, must have § 3553(a)'s sentencing factors weigh in his favor, must not be a threat to others as determined by § 3142(g), and must fit within one of the four categories in § 1B.13 of the Sentencing Guidelines." *United States v. Shah*, 2020 WL 1934930 at *1 (E.D. Mich. April 22, 2020) (citations omitted).

    **C.**    **Relief Available**

Before addressing the merits of Murphy's motion, the Court will clarify what relief it can provide under the compassionate-release statute. Murphy asks the Court to allow him to "serve the balance of his sentence in home confinement." (ECF No. 32, PageID 168). At first glance, it appears that the Court cannot grant this request because it lacks the authority to order the BOP to allow Murphy to serve the remainder of his current sentence on home confinement. *See Tapia v.*

*United States*, 564 U.S. 319, 331 (2011) (holding that "[w]hen a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over 'the placement of the prisoner's imprisonment,' [18 U.S.C.] § 3621(b)]"); *see, e.g., United States v. Apolinar Meraz-Magana,* 2020 WL 2062468 at *3 (N.D. Ohio, April 29, 2020) ("Further, if the Court entertained [Defendant's] motion on the merits, it would be without authority to modify his sentence, as he requests, to provide for home confinement because that authority rests with the BOP."); *United States v. Curry*, 2019 WL 508067, at *1 (E.D. Ky. 2019) ("Because the First Step Act gives the Attorney General [or the BOP by designation of the Attorney General] the discretion to determine if and when home confinement is appropriate, this Court does not have the authority to grant [home confinement].") (emphasis in original).

However, the compassionate-release statute allows the Court to craft a reduced sentence that, for all practical purposes, looks very much like ordering that Murphy be allowed to spend the remainder of his current sentence on home confinement. It just requires a few more steps. Under 18 U.S.C. § 3582(c)(1), the Court can reduce Murphy's current custodial sentence and "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). In other words, the Court could reduce Murphy's current sentence to time served, then order Murphy to serve a time period equal to his undischarged prison term on supervised release and order that, as a condition of that release, he be confined to his home. *See, e.g., United States v. Hunt*, 2020 WL 239522 at *8 (E.D. Mich. May 12, 2020). But modifying Murphy's sentence in this way would still require a reduction of his current custodial sentence. Therefore, he would still need to meet the conditions described in Section II.B of this Opinion.

8

### D.     Extraordinary and Compelling Reasons / U.S.S.G. § 1B1.13

The First Step Act effectively transferred the power to determine whether "extraordinary and compelling reasons" exist from the BOP to the federal courts. *See, generally, United States v. Young*, 2020 WL 1047815 at *3-6 (M.D. Tenn. March 4, 2020) (describing changes in the statutory and regulatory standards that governed compassionate release motions from 1984 to the present). Before the First Step Act, the BOP made that call by applying a standard articulated by the United States Sentencing Commission in an Application Note to U.S.S.G. § 1B1.13. *Id*.  Today, that finding is not predicated on either that Application Note or the BOP's judgment because the First Step Act gave the judiciary "the authority to reduce a prisoner's sentence upon the [C]ourt's independent finding of extraordinary or compelling reasons." *Id*. at *6 (collecting cases). To make this finding, the Court may still look to § 1B1.13's Application Note for guidance in applying this "vague standard." *United States v. Ebbers*, -- F.Supp.3d --, 2020 WL 91399 at *2 (S.D.N.Y. Jan. 8, 2020); *see also United States v. Beck*, 425 F.Supp.3d 573, 579 (M.D.N.C. 2019).[4]

To begin, § 1B1.13's Application Note provides certain circumstances in which a prisoner's medical condition constitutes an extraordinary and compelling reason for a sentence reduction:

1. **Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    **(A) Medical Condition of the Defendant.**

---

[4] Whether the Application Note to § 1B1.13 restricts the Court's analysis of "extraordinary and compelling reasons" or is merely guidance is not dispositive of this motion, or likely of any other similar motion. Even if § 1B1.13 it is only guidance, the defendant's release must still be consistent with that section under 18 U.S.C. § 3582(c)(1)(A) (requiring a sentence reduction to be "consistent with applicable policy statements issued by the Sentencing Commission.")

 **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

 **(ii)** The defendant is

  **(I)** suffering from a serious physical or medical condition,

  **(II)** suffering from a serious functional or cognitive impairment, or

  **(III)** experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, comment. (n.1) (2018).

The Court has reviewed the medical records that Murphy attached to his motion, (ECF No. 32-6, PageID 198-220), and Murphy clearly does not meet either circumstance described in § 1B1.13's Application Note. He is a 40-year-old man who is generally in good health. His asthma—the only medical condition he complains of in support of his motion—appears to be managed by his prescribed inhaler. There is no indication that Murphy's asthma can be considered a "terminal illness (i.e., a serious and advanced illness with an end of life trajectory")" or that it can be considered a "serious physical or medical condition" that "substantially diminishes [his ability] to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."

Even outside the guidance provided by the Application Note, the current circumstances do not provide extraordinary and compelling reasons to reduce Murphy's sentence. A court in this

district has defined "extraordinary" as "exceptional to a very marked extent," and "compelling" as "tending to convince or convert by or as if by forcefulness of evidence." *Shah*, 2020 WL 1934930 at *2 (E.D. Mich. April 22, 2020) (quoting Webster's Third International Dictionary, Unabridged (2020)). Another court in this district has described the requirements of "'extraordinary' as beyond what is usual, customary, regular, or common," and "'compelling reason' as one so great that irreprovable harm or injustice would result if the relief is not granted." *United States v. Sapp*, 2020 WL 515935 at *3 (E.D. Mich. Jan. 31, 2020) (citations omitted).

Murphy's fear of COVID-19 at FCI Elkton is understandable. According to the Centers for Disease Control, people with moderate-to-severe asthma have a higher risk for complications from COVID-19. *See* Coronavirus Disease 2019 (COVID-19), At Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 12, 2020). And, according to the BOP's own statistics, FCI Elkton has many cases of COVID-19.

However, Murphy's fear is also speculative. Murphy "has an elevated risk of developing the more severe symptoms of COVID-19, but that generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release. . . ." *United States v. Peaks*, 2020 WL 2214231 at *2 (E.D. Mich. May 7, 2020); *see also Shah*, 2020 WL 1934930 at *2 ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . whether Defendant will contract COVID-19, and whether he will develop serious complications does not justify the extreme remedy of compassionate release.") Further, FCI Elkton has instituted strict "shelter-in-place" protocols, designed to prevent the further spread of COVID-19 within the facility. Gov.'s

Res. 7-8 (ECF No. 36, PageID 270-271).[5] And, as part of the *Wilson* case, Murphy may soon be removed from FCI Elkton, thereby alleviating some of his concern. In all, the Court concludes that the present circumstances do not present extraordinary and compelling reasons to justify reducing Murphy's sentence and that Murphy's release would not be consistent with the applicable policy statements issued by the Sentencing Commission.

### E. 18 U.S.C. § 3553(a) factors

Moreover, the 18 U.S.C. § 3553(a) sentencing factors do not favor release. Murphy was convicted of dealing heroin. At sentencing, Murphy was held accountable for 109.19 grams of heroin and for maintaining a "stash house." PSR ¶ 20. And this offense was not Murphy's first. He has prior convictions for assault with a dangerous weapon, felony-firearm, and fleeing a police officer. *Id*. at ¶ 38, 40, and 41. He has also repeatedly violated the terms of his probation/parole for these and other offenses. *Id*. at ¶ 38, 39, and 40.

For Murphy's heroin-dealing conviction, the Court imposed a sentence that was substantially lower than the Guidelines Range calculated by the Probation Department. He has served approximately 32 months of his 60-month custodial sentence. Cutting his below-Guidelines sentence nearly in half would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from further crimes of the defendant. In other words, a 32-month sentence, or a reduced custodial sentence with a

---

[5] The Government also provided a copy of a sworn affidavit from Sarah A. Dees, the Health Services Administrator at FCI Elkton, which was filed in the *Wilson* case. *Wilson*, Case No. 20-00794 (ECF No. 58-1) (N.D. Ohio, filed April 30, 2020). Dees's affidavit explains, in detail, the steps taken by the BOP nationally and at FCI Elkon to address COVID-19. Although this affidavit was not filed in this case, the Government emailed it to the Court's case manager and cc'ed Murphy's counsel.

12

longer term of supervised release, would not be sufficient to comply with the purposes set forth in § 3553(a)(2).

## CONCLUSION

For the reasons articulated in Section I of this Opinion and Order, the Court **GRANTS** Murphy's motion for judicial recommendation of maximum halfway house time. The Court recognizes, however, that the decision of whether to place Murphy at a halfway house, and for how long, is left to the BOP, which may have better information than the Court currently has.

For the reasons articulated in Section II of this Opinion and Order, the Court **DENIES** Murphy's motion for compassionate release. Murphy has not shown that there are extraordinary and compelling reasons to reduce his sentence, that his release would be consistent with applicable policy statements issued by the Sentencing Commission, or that the § 3553(a) sentencing factors favor his release.

**IT IS SO ORDERED**.

                                                          s/Sean F. Cox
                                                          Sean F. Cox
                                                          United States District Judge

Dated:  May 15, 2020